(Tex. Cr. App.), 20 S. W. 357; 31 Tex. Cr. R. 216.   This article applies only to insanity caused by the recent use of intoxicating liquors.   Id.

Intoxication is no justification or excuse for crime; but evidence of excessive intoxication by which the party is wholly deprived of reason, if not indulged in to commit crime, may be admitted to the jury for it to consider whether in fact a crime has been committed, or to determine the degree, where the offense consists of several degrees.   O'Grady v. State (Neb.), 54 N. W. 556

## Court of Appeals.

January 26, 1897.

## PEOPLE v. FRANK C. CONROY.

1. APPEAL—RECORD—CORRECTION.

The power of correcting alleged mistakes in the stenographer's minutes which form part of the case and exceptions upon an appeal in a criminal action, if it exists in any officer or tribunal, can be exercised only after due opportunity has been afforded to the defendant to be heard.

2. SAME.

In such case, it is the duty of the clerk to cause the stenographer's minutes to be printed literally as filed, without change or alteration of any kind made after date of filing.   If such changes may be made at all it is not for the clerk to make them, without the knowledge or consent of the defendant, or to practically indorse them after they have been thus made.

3. SAME.

The court of appeals, though it has no power to alter the record furnished by the county clerk, has power to require the clerk to do his duty by obeying the statute.

4. SAME.

The court of appeals has, upon a proper application and the full presentation of the facts, the right to determine whether the records have been prepared and printed according to law, and, if it finds that they have not, to direct the clerk accordingly.

Motion by appellant to require the clerk to print and serve the record, as required by statute, upon appeal from a judgment, convicting defendant of murder in the first degree.

Frank C. Conroy was convicted of murder in the first degree and sentenced to death and appeals.   Motion by appellant to re-

quire the clerk to print and serve the record as required by the statute.

John C. Keeler, for the motion.

Ledyard P. Hale, for the people.

PER CURIAM.—On the 10th of August, 1896, at the trial term of the supreme court held in and for the county of St. Lawrence, the defendant was convicted of the crime of murder in the first degree, and sentenced to be put to death in the manner prescribed by law during the week commencing on the 28th of September, 1896. On the 12th of that month an appeal from the judgment of conviction was taken to this court, and, in due course of time, printed copies of the judgment roll, notice of appeal, and what purported to be the minutes of the stenographer, as transcribed and certified by him and filed with the county clerk, were served on the attorney for the defendant. Each copy bore the certificate of the county clerk that it was a copy of the stenographer's minutes, the notice of appeal, and the judgment roll on file in his office, and that the same had been compared by him with the originals, and that they were correct transcripts therefrom and of the whole thereof. Upon comparing the printed copies thus certified with the original transcript of the minutes filed with the county clerk, and with the copy filed with the governor, it appeared that changes had been made therein, but on investigation it also appeared that such changes were made in good faith, to correct what were regarded as manifested errors, and not for the purpose of prejudicing the defendant. While some changes were made by the stenographer by interlineation before the minutes were filed, so as to conform to his original notes, others were made without his authority, after the minutes were filed, and without the knowledge or consent of the defendent or his attorney. Our attention is called specifically to upward of 100 changes, the most of which appear upon inspection to be of no material importance, as they simply correct mistakes in grammar and the like, without changing the meaning in any particular; but a few, if not clearly material, are of such a character as to make it a debatable question

whether they may not prejudice the defendant upon the hearing of the appeal.

By section 485 of the Code of Criminal Procedure the clerk is required, upon a conviction for a criminal offense, to make up a judgment roll consisting of various papers, which are carefully specified, and, as the section further provides, "when a judgment is of death the clerk, in addition to the foregoing, must forthwith cause to be prepared and printed the number of copies of the stenographer's minutes and judgment roll which are required by the rules of the court of appeals, which shall form a case and exceptions upon which the appeal shall be heard," and the expense of preparing and printing the same is made a county charge. The practice thus authorized is anomalous, and differs radically from the ordinary means provided for the review of judgments, both civil and criminal. Ordinarily, a case is made by the appellant, to which the respondent may propose amendments, and, if these are not agreed upon by the attorneys for the respective parties, they are settled by the judge who presides at the trial. In this way, as the experience of generations has shown, substantial accuracy is attained, and the case is presented to the appellate court upon as perfect a picture of what transpired at the trial as can well be secured. Even on an appeal from justice's court, in a civil action involving the most trifling sum, there is careful provision for repeated amendments of the return in order to obtain a correct record for the purpose of reviewing the judgment. Upon an appeal, however, from a judgment of conviction in a capital case, involving the highest peril to which a human being can be exposed, no opportunity is, in terms, provided for the correction of the most glaring mistake, or the settlement of questions as to alleged mistakes, as there is in civil cases by hearing on notice before the presiding judge, who, by his experience, knowledge, and impartiality, is in a better position to determine what the record should be than any one else. The stenographer's minutes, with the crude and literal statements of counsel, witnesses, and jurors, material and immaterial, with all the inaccuracies of grammar, absence of clearness, and want of condensation incident to verbal utterances written down and transcribed verbatim, are now, as the statute has usually been enforced in practice, printed in hæc verba

under the direction of the county clerk. No express provision is made by which a mistake, however obvious, can be corrected, or a statement however immaterial can be omitted. While the statute says that the clerk must "cause to be prepared and printed" the requisite number of copies, no direction is given as to what preparation he is to make, and it doubtless means that he is simply to cause copies to be made for printing, as it would not be reasonable to intrust that officer with the power to make a case, without notice to either party, either by changing the minutes of the stenographer or reducing them to narrative form. It is claimed that no court or officer has the power, either with or without notice to the parties, to make any change whatever in the minutes of the stenographer after they have been filed with the county clerk. We do not now sustain, nor do we dissent from, this position taken by the defendant's counsel. It may be that the statute compels this conclusion. On the other hand, it may be that there is an implied power to correct mistakes, springing from the commanding necessity of the situation, the nature of the case and exceptions, and the method of procedure in all other appeals that prevailed when the statute was past. We are not now required to decide whether such a power exists or not. We simply hold that, if it does exist in some office or tribunal, it can only be exercised after due opportunity has been offered to the defendant to be heard. To hold otherwise would violate every precedent that has been created to protect rights of property and the liberty of the person. The changes made in the stenographer's minutes under consideration, after they had been filed with the county clerk, were without notice and without authority. Even if they were immaterial and made with the best of motives, we cannot too strongly condemn any interference with a public record of such great importance. On the facts as they now appear, we think it is the duty of the clerk to cause the stenographer's minutes to be printed literally as filed, without charge or alteration of any kind made after that date. If changes may be made at all it is not for him to make them, without the knowledge or consent of the defendant, or to practically indorse them after they have been thus made. He has no more power to alter the stenographer's minutes, or to adopt an alteration made by some one else, then he has to tamper with the judg-

ment roll itself. What we have said in relation to him applies with equal force to every one else, unless it may be, as we have suggested, but not decided, that mistakes may be corrected upon due notice to the defendant, or with his consent.

Our power to make the order asked for by the defendant is challenged by the learned district attorney upon the ground that the statute has not conferred upon us the requisite authority. In People v. Hoch, 150 N. Y. 291, 44 N. E. 976, we held that we had no power to alter the record furnished us by the county clerk. We still adhere to that conclusion, but we further hold that we have power to require the clerk to do his duty by obeying the statute. This power exists by necessary implication, as the right to hear the appeal involves the right to require such a record to be presented as the law commands the clerk to prepare and print. Unless he does his duty, the right of appeal given to the defendant may be of no avail. As the printed records are required to be furnished to us for official action, we necessarily have the right to determine, upon a proper application and the full presentation of the facts, whether they have been prepared and printed according to law, and, if we find that they have not, to direct the clerk accordingly. While we think, therefore, that the motion should be granted, before we take leave of the subject we wish to call attention to some evils that have been introduced by the strange and unsafe practice provided by the statute under consideration. The expense of printing the record, which falls upon the county where the case arose, is usually doubled, and sometime quadrupled, not only by including immaterial matter, but also by presenting the evidence in the form of questions and answers, instead of condensing it in the form of a narrative. The appeal books in the murder cases that have been before us during the comparatively brief period that this statute has been in force contain thousands upon thousands of pages of evidence taken upon the examination of jurors, although no objection was made nor exception taken, and in many instances where the juror did not sit upon the trial. We have had cases presented where between three and four hundred pages of printed record contained only matter of this kind, the printing of which cost several hundred dollars, and yet it was not only absolutely useless, but it imposed an unnecessary burden upon

the judges who had to read it in order to discharge their duty to the parties, for only by reading could they tell whether it was material or not. A record of one thousand pages, which is not unusual in these cases, if prepared in the narrative form in which civil cases are required to be presented to the court, could ordinary be reduced to not more than three or four hundred pages. The saving of expenses to the people, and of labor to the judges, who in the crowded condition of the calendar, have no time to waste on useless investigation, induces us to again call attention to the subject, as we did on a former occasion. People v. Shea, 147 N. Y. 78–86, 41 N. E. 505. Aside from the saving of expense to the public and the time of the court, it is dangerous to permit an appeal involving human life to be heard upon a record, the correctness of which depends wholly upon the accuracy of a single official, working, always rapidly, frequently under great difficulties, and sometimes in the midst of confusion caused by the witness and both counsel speaking at the same time. It is no reflection upon the faithful body of men who serve as stenographers in the trial courts to say that they cannot always be accurate; that they sometimes misunderstand the answers of witnesses, and fail to catch the exact words of the court in its rulings or charge. It is possible that a stenographer may be incompetent, or suffering from some ailment, temporary or permanent, that would prevent him from hearing accurately or recording literally what transpires on the trial. As the change of a single word may involve serious consequences, the propriety of requiring a case to be made and settled in the usual way is too obvious for discussion. While perfect accuracy is not attainable by any method, when a proposed case is carefully prepared and presented with the amendments proposed by the other side to the presiding judge for settlement, that officer, aided by the minutes of the stenographer, the suggestions of counsel, and his own minutes and recollection, is in a position to insure a record that is substantially correct. We hope that the safe practice which formerly prevailed may be restored.

Returning to the matter directly before us, it is ordered that the county clerk of St. Lawrence county forthwith cause to be prepared, printed, and served the number of copies of the stenographer's minutes and judgment roll required by the rules of this court, and

that such minutes be printed as they were filed by the stenographer, without omission or change of any kind.

All concur.

Motion granted.